## JOHN CROZIER *et al.*

### *v.*

## PETER C. HOYT *et al.*

*Filed at Ottawa November 20, 1880.*

1. WILL—*life estate with power of sale—as to the extent of the power.* A testator provided in his will as follows: "I will that my wife have the entire control of my personal and real estate, of whatsoever kind or nature or wheresoever situated, after the payment of my debts, so long as she shall live, for her support and maintenance in such a manner as her situation in life requires." The remainder, after the termination of the life estate of the testator's wife, in certain real estate described, was given to Roberts, a son-in-law of the testator's wife, the clause so disposing of such remainder concluding thus: "in consideration that he take good care of my wife and treat her kindly, should she call on him to do so, and should she choose to live with him and her daughter,—it being understood that he and his wife treat my wife as becomes a son and daughter." The succeeding clause gave certain described real estate to Crozier, the nephew of the testator, and then follows this provision: "All the rest of my estate, real and personal, after the termination of the life estate of my wife, I give to my heirs at law."   *   * A further clause provided: "I hereby give to my wife full power to sell all my personal estate and all my real estate, except the lands willed to Crozier and Roberts, aforesaid, should it be necessary for her so to do for her maintenance and support,—it being understood that she is not to waste any property; but I want to give her full power so as to support herself well. And, should she choose to help her other daughter, if she should become a widow, or help her said daughter or her children, she has full power to do so before the heirs aforesaid take their remainders—hereby giving my wife full power to sell any of the property aforesaid and give good title to the same, either at public or private sale, using her own judgment as to which shall bring the greatest amount of money." The testator had neither children nor descendants of children. After his death his widow sold and conveyed all the real estate. Upon bill filed by the heirs at law of the testator to vacate such sale for the want of power to make it, it was *held*, the exercise of the power of sale and conveyance was entirely within the discretion of the widow of the testator, and, in the absence of fraud or collusion, was not subject to review or control by a court of equity.

2. Nor was the power to sell and convey to be limited in its exercise by the necessity for the maintenance and support of the testator's widow,—but the power was given for all the purposes mentioned—to "help her other daughter, if she should become a widow, or help her said daughter or her chil-

dren," if she should choose to do so, as well as to provide for her own maintenance and support. The power to help her daughter was not to be considered as restricted to the proceeds of the life estate of the widow, but extended to the whole estate, or to such part of it as she might choose to devote to such purpose, excluding only the real estate specifically devised.

3. There were two daughters of the testator's widow, and by the words "other daughter," used in the will, it is held, the testator meant the daughter other than the one married to Roberts, who had been previously mentioned,—and by "said daughter" he meant Mrs. Roberts. But even a different construction, holding the "said daughter" to mean "other daughter," would not militate against the discretionary power to sell and convey for the purposes mentioned, but would add to the contingencies in which that power might be exercised.

4. SAME—*application of proceeds of sale—duty of purchaser.* The doctrine applicable to cases where it is held the purchaser is bound to see to the application of the purchase money, is not relevant to the case of a sale such as was authorized by the will mentioned. The question in such case is purely one of power. The wife having the power to sell and convey to help her daughters, they, and not the heirs at law, were interested in the application of the purchase money.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding.

Appellants exhibited their bill in equity against appellees, and Jesse R. Eastburn and Richard Roberts, in the court below, alleging that one James Crozier, who died testate on the 17th of June, 1869, seized and possessed of a large amount of real and personal estate, by his last will and testament directed, first, that all his debts and funeral expenses be paid; second, he devised and bequeathed to his wife, Ann Crozier, the entire control of his personal and real estate, so long as she should live, for her maintenance and support; third, he devised to Richard Roberts, the son-in-law of his wife, the remainder in certain specifically described real estate after the termination of his wife's life estate therein, which is expressed to be upon the consideration that said Roberts take good care of the said wife of the testator, and treat her kindly, should she call on him to do so, and should she choose to live with him and her daughter; fourth, he devised

to his nephew, Thomas Crozier, certain specifically described lands; fifth, he devised and bequeathed all the residue of his estate, real and personal, after the termination of the life estate of said wife therein, to his heirs at law; sixth, he gave to his said wife full power to sell all his real and personal estate, except that devised to Roberts and Crozier, if it should be necessary for her so to do for her support and maintenance,—it being also expressed therein that she was not to waste said property, but to give her full power to support herself well, and if she should choose to help her other daughter, if she should become a widow, or to help her said daughter or her children, she thereby had full power to do so before the heirs, aforesaid, took the remainder. And power was expressly, thereby, given her to sell and convey any of said property, either at public or private sale, as she might think best; seventh, he appointed his said wife executrix, etc.

It is further alleged that the will was duly probated, etc., estate settled up, etc.; that said Ann did choose to go and live with said Roberts, after death of said James, and she continued to live with them until her death; that the land so willed to Roberts, on said condition, was a good farm, well improved, and of the value of $5000; that the rents and profits thereof, together with the rents and profits of the town property conveyed to appellees, Hoyt, Watson and Standish, were more than sufficient to support and maintain the said Ann, in accordance with the direction of said will, and it was unnecessary to sell any part of the real or personal estate for her support; that her other daughter, who was the wife of Jesse Romine, did not become a widow, nor did the said Ann help her or her children, as was provided in the sixth clause of said will, and so it was not necessary to sell any part of said property; that appellants well hoped that said Ann would faithfully keep and preserve said estate, as she was in duty bound to do, that they might receive their residuary interests therein, but said Ann wholly disregarded her

trust, and without authority of law, has sold or pretended to sell and convey away, the whole of said real estate and the balance of the personal property, so that if the intentions of the said Ann are to be fully carried out, there would be nothing left of said estate; that on the 3d of September, 1874, said Ann conveyed to Jesse R. Eastburn certain of said real estate, which is described; that on the 20th day of March, 1875, said Ann conveyed certain other of said real estate, which is described, for the consideration expressed in the deed of $550; that on the 18th day of May, 1877, said Ann conveyed to Richard Roberts certain other of said real estate, which is described; that on the 22d day of September, 1877, said Ann conveyed certain other of said real estate, which is described, to appellee Lorenzo Watson; that on the 13th of October, 1877, said Ann conveyed certain other of said real estate, which is described, to appellee Fredonia Standish, for the consideration expressed in the deed of $1500; and that on the 16th of September, 1879, said Ann conveyed certain other of said real estate to said Richard Roberts.

It is further alleged, that the property so deeded to appellees, Hoyt, Watson and Standish, was improved property at the time of the death of James Crozier, and that the yearly rental value of such was and is $200, making, in all, $600, for the support of the said Ann; that said sales are void, because said Ann did not have absolute and unlimited, but only a limited power to sell such parts as should be necessary for support and maintenance, as expressed in said will; that each and every one of said sales was made at the instance of Richard Roberts, and that what of purchase money was paid thereon was paid to him, and was by him squandered and wasted, so that said Roberts is now wholly insolvent, having spent, wasted and squandered, not only the money so received, but cut and destroyed the timber on the land so conveyed to him, etc.; that all of said grantees took their respective conveyances and made their purchases with full knowledge of the

rights of appellants under said will; that they were each in duty bound to know what title or interest said Ann could convey, and to know that each and every one of the provisions of said will is to be strictly carried out, not only on behalf of said Ann, but also on behalf of appellants; that said Ann resided with said Roberts, and therefore it became and was unnecessary to sell any portion of said real estate for her support, as the value of the land or farm, as well as the rents, etc., were amply sufficient for her support, as provided in said will.

It is further alleged, that each of the said grantees took possession of their respective purchases immediately after said purchase, and still hold and enjoy the same, and refuse to deliver up said estate to said appellants; that said deeds are a cloud upon appellants' title, etc.; that said Ann departed this life January 16, 1880.

The prayer is, that the said deeds of the said Ann to the appellees and the other defendants, be declared of no effect, and that they, and those claiming under them, take nothing by their respective deeds, etc.

A copy of the will of James Crozier is annexed as an exhibit.

There was a general demurrer by Hoyt alone, a general demurrer by Watson and Standish jointly, and a general demurrer by Roberts and Eastburn jointly. The court overruled the demurrer as to Roberts and Eastburn, but sustained the demurrer as to appellees, Hoyt, Watson and Standish, and decreed that as to them the bill be dismissed, and that appellants pay the costs. From this decree the present appeal is prosecuted.

Mr. GEORGE B. JOINER, for the appellants.

Mr. ROBERT DOYLE, for the appellees.

Mr. E. M. AEMOS, for the appellee Hoyt.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The several clauses of the last will and testament of James Crozier, deceased, supposed to have a bearing upon the present controversy, will be first noticed in the order of their occurrence.

The second clause is: "I will that my beloved wife have the entire control of my personal and real estate, of whatever kind or nature soever or wheresoever situated, after the payment of my debts as aforesaid, so long as she shall live, for her support and maintenance in such a manner as her situation in life requires."

By the third clause the remainder, after the termination of the life estate of the testator's wife, in certain real estate therein described, is given to Richard Roberts, the son-in-law of the testator's wife, and the clause concludes in these words:

"On consideration that he take good care of my beloved wife and treat her kindly, should she call on him to do so, and should she choose to live with him and her daughter—it being understood that he and his wife treat my beloved wife as becomes a son and daughter."

By the fourth clause, certain described real estate is given to Thomas Crozier, the nephew of the testator.

The fifth clause then follows, thus: "All the rest of my estate, real and personal, after the termination of the life estate of my wife, I give to my heirs-at-law, in such shares and to such persons as by the statute of Illinois, at this time, is provided."

The sixth clause is as follows: "I hereby give to my wife full power to sell all my personal estate and all my real estate, except the lands willed to T. Crozier and Richard Roberts, aforesaid, should it be necessary for her so to do for her maintenance and support—it being understood that she is not to waste any property; but I want to give her full power so as to

support herself well. And, should she choose to help her other daughter, if she should become a widow, or help her said daughter or her children, she has full power to do so before the heirs aforesaid take their remainders—hereby giving my wife full power to sell any of the property aforesaid and give good title to the same, either at public or private sale, using her own judgment as to which shall bring the greatest amount of money."

It seems quite clear what must have been in the mind of the testator; and there is no arbitrary rule of law to be invoked which forbids that the scheme he intended shall be carried out.

The case shows that the testator had neither children nor descendants of children. There was none except his wife who stood in such relation towards him as is ordinarily regarded as constituting a strong claim to his bounty. Very naturally in this state of case, the first and paramount object of his anxiety were the comfort and happiness of his wife. Next to these and subordinate to her interests, he designated her son-in-law and his nephew as objects of his bounty. These are all whom he deemed it important to remember by name, and plainly, all whom he was specially anxious to provide for. The wife must, in the first instance, have the entire control of all his estate during her life ; and, except that specifically devised, she is empowered to sell and convey any and all of it for either of these purposes : 1st. For her necessary maintenance and support. 2d. " To help her *other* daughter if she should become a widow." 3d. To " help her said daughter or her children." And she has full power, by the express language of the will, to make such sale and conveyance before the testator's heirs at law take their remainders. In other words, they take the remainder burdened with the discretionary power in her to sell and convey the real estate for either of these purposes. We think it clear that by the words " other daughter," the testator meant the daughter of his wife, other than the one married to Roberts, of whom he had previously

been speaking, and that by "said daughter" he meant Mrs. Roberts. This gives full effect to all the words employed, and any other construction will not. But, even if "said daughter" be held to mean "other daughter," the practical effect, so far as concerns the present case, will be precisely the same. In that event, there were two contingencies in which the testator's wife was authorized to sell and convey the property to help her "other daughter"—namely, first, in case she should become a widow, and secondly in case the testator's wife should choose to help her and her children. The exercise of the power of sale and conveyance, under any construction of this language, is left discretionary with the testator's wife. And she is, moreover, further expressly vested with the discretion to sell either at public or private sale, using her own judgment as to which would bring the greatest amount of money.

But counsel insist the power to sell and convey were only to be exercised in case it should become necessary for the maintenance and support of the testator's wife. To so hold is entirely to disregard the language of the testator. He says: "I want to give her full power so as to support herself well; *and* should she choose to help her other daughter —if she should become a widow—or help her said daughter, or her children, she has full power to do so before the heirs aforesaid take their remainder." This could not mean that she should have full power to help them from the proceeds of her life estate, for the heirs have nothing to do with that, their interest being expressly limited by the will to the remainder in the real estate after the termination of her life estate therein, and the use of all the property during life had, in the most unqualified manner, been previously given her for her own maintenance and support. But the concluding clause of the sentence shows, beyond question, that the power to sell and convey was for all the purposes previously mentioned. It is, "hereby giving my wife full power to sell any of the property aforesaid and give good title to the same," etc., etc. This follows immediately and as an addition to the

clause which gives authority to help her daughters, and provides the way by which the needed means are to be obtained.

But counsel lay much stress upon a preceding injunction on the testator's wife, in the same clause of the will, that, " it being understood that she is not to waste any property," etc., and contend that, by this it is clear the power of sale was to be exercised only in case of absolute necessity for the maintenance and support of the testator's wife.

Ordinarily, a trust will not be implied if such a construction of the precatory words would render them repugnant to, or inconsistent with, other parts of the same instrument. Perry on Trusts, (1st ed.) 88, § 115.

And we have just seen that to limit the right to sell and convey, here, to the maintenance and support of the testator's wife, would be repugnant to and inconsistent with the language giving the wife power to help her daughters.

But this language may have full effect without, in the least, affecting the validity of the sale involved in the present inquiry. The testator did not wish his estate wasted, but he gave his wife power to sell and convey it to help her daughters.

It does not appear that it was wasted and that the sale and conveyance were not in good faith within the discretion of the power. Where, as in this will, a discretionary power is conferred, and the power is exercised in good faith and without fraud or collusion, a court of equity will not review or control it. Perry on Trusts, (1st ed.) § 511; Hill on Trustees, (4th Am. ed.) 760.

The doctrine applicable to cases where it is held the purchaser is bound to see to the application of the purchase money, is not relevant here. The question is purely one of power. If the wife had the power to sell and convey, to help her daughters, then they, and not these appellants, were interested in the application of the purchase money.

We think, in the absence of fraud and collusion, which are not charged in the bill, the wife was empowered to sell and

convey, and the purchasers are entitled to protection under her deeds.

The demurrer was, therefore, properly sustained, and the decree below will be affirmed.

*Decree affirmed.*