AMELIA GRIFFIN *et al.*

*v.*

JULIA A. GRIFFIN *et al.*

*Filed at Ottawa May 12, 1892.*

1. WILL—*devise of life estate with power to sell—power construed.* A testator by his will directed the payment of his debts out of his real or personal estate, at the discretion of his widow, and devised to her, absolutely, all his personal estate after the debts were paid, and the use of all his real estate during her life, with the same right to sell the same for her support and maintenance that he would have if living, and then provided that at her death, if there should be left any of the real estate, it should be divided equally among his children, or their heirs, in case of their death, and appointed his widow the sole executrix, dispensing with her giving bond or having the property appraised, and gave her good right to do all things as he might do if living, and again directed that at her death, if there should be any of the real estate left after paying all her just debts, the heirs might divide the same among them, if they could agree, otherwise the same was to be sold and divided between them : *Held,* that the general scope and plan of the will was to give the personal property to the wife, and in respect of the real estate, to create a life estate in her, with power to sell and convey the fee, and limit the remainder, after the termination of the life estate, in the children and grandchildren.

2. Where a testator by his will gave his widow the power to sell land for the payment of his debts, if she should think that to be advisable, and also power to sell lands for her support and maintenance, and appointed her sole executrix, dispensing with her giving bond or apprais-

ing the property, a clause therein that she "has a good right to do in all things" as he "would have just right to do if living," can not be regarded as a delegation of power to make sales of real estate as the testator might have done, in addition to the power of disposal of such estate previously given, but such clause had reference to what she might do as executrix in settling his estate. The most that can be said of such clause is, that its words are broad enough, in terms, to apply to and enlarge the implied power to sell real estate to pay debts.

3. SAME—*life estate to widow with power to sell—duty and reliance of purchaser.* Where a testator, by his will, gives his widow a life estate in his lands, and the right to determine whether she will sell the same for her support and maintenance, the purchaser may rely upon the fact that the execution of the power does not depend on actual necessity for making the sale, and it will not devolve upon him the duty of ascertaining that a sale is essential for her support and maintenance, or to see to the application of the purchase money.

4. A will, after devising all the testator's personal estate to his wife, and the use of all his real estate during her natural life, contained this condition immediately following : "with the same right to sell the same for her support and maintenance that I would have if living:" *Held,* that the condition imposed by the words above quoted was not a condition precedent, but a condition subsequent, and that in case of a sale under the power it was not incumbent on the purchaser to show a necessity for the sale for the widow's support, or to look to the application of the proceeds, she being the sole judge of the amount to be used by her for her support and maintenance.

5. SAME—*discretion in executrix—deed of, upheld—presumptions in support of deed.* A testator authorized his widow, as his executrix, to sell real estate for the payment of his debts, if she thought best, and also for her support and maintenance. In about a year after his death the widow made a deed to a son of a forty-acre tract of land, but did not therein describe herself as executrix, or make any reference to any will or power, and did not sign the same as executrix : *Held,* that the deed was valid as an execution of the power to sell for the payment of debts, notwithstanding the form thereof, and that from the making of such deed, and her failure to sell the personalty for more than two years from the testator's death, she must be presumed to have elected to pay the debts out of the realty.

6. A testator, by a clause in his will, imposed confidence in his wife, who was made executrix, and invested her with the same right to sell all of his real estate for her support and maintenance that he himself would have if living. About twelve years after the death of the testator the widow, as executrix, sold and conveyed another forty-acre tract left by the testator. The deed recited that it was made in pursuance of the will, to obtain money for the support of the widow, as all the personal

effects bequeathed in the will were absorbed, and there were no other means left for her support. It also appeared, from other evidence, that she needed the proceeds of the sale for her support: *Held*, that such deed was a valid exercise of the power to sell for the widow's support, and that it passed the fee.

7. Where a will gives a power to sell land for the payment of debts of the testator, and his debts are mentioned twice in the will, and a sale is made, and the heirs or devisees take no steps to impeach the sale until twenty-four years thereafter, when both the grantor and grantee are dead, in the absence of any proof tending to show there were no debts it will be presumed that there were debts to uphold the deed. In such case, the fact that no debts were proved and allowed in the county court is of no moment.

8. SAME—*devise of the life estate with power to sell for support of life tenant—lien on property for debts of life tenant at her death.* A testator devised a life estate in all his real estate to his wife, for her use during her natural life, with the right or power to sell the same for her support and maintenance, and provided in the will as follows: "At her death, if there should be any of said real estate left after paying all her just debts, then the aforenamed heirs may divide the same :" *Held*, that this latter clause made the debts of the widow existing at her death, no matter for what purpose contracted, a charge upon the land, and gave them priority over the claims of the devisees in fee.

9. SAME—*power of sale under—whether properly executed.* Under a power of sale in a will for the support and maintenance of the widow of the testator, the widow made a sale and conveyance of a tract of land worth from $3200 to $4000, for $2000, to a son, who was to pay for the same by the support of his mother during her life, she then being over ninety years old, and give her a decent burial at her death. The son then mortgaged the land for $1000, of which $409 was used in paying his mother's debts, and the balance applied in discharge of his own debts. The mother had a life estate under the will, and at the time of the sale was receiving the rents of the land and a pension of $144 a year, while her expenses did not exceed $65 a year: *Held*, that her deed was not a good execution of the power of sale, and that the deed was properly cancelled by the court below as a fraud on the devisees of the remainder in fee.

10. In such case it was held that it was not within the reasonable contemplation of the power that the land should be sold thereunder for the purpose of paying the debts of the life tenant incurred for purposes other than her support and maintenance, nor was it intended that the land should be sold otherwise than in the usual and customary manner, for a stipulated sum in money, and with some reference to its value.

11. POWERS—*execution of—presumptions in support.* Where a person. has two or more powers over the same estate, with different circumstances, and does an act and makes no reference to either power, such act will be deemed an execution of that power which will support the disposition.

12. SAME—*execution after the expiration of the purposes of the power.* If the debts for the payment of which a power of sale of real estate is created are all either paid or barred by the Statute of Limitations, then the grantee of the power is not authorized to exercise the power, and a deed executed under it can not be sustained.

13. SAME—*burden of proof in support of execution.* Where an executrix has not the fee to land sold by her, but merely a power to sell and convey for the purpose of paying debts of the testator, the burden of showing the existence of debts will be on those claiming under the deed.

14. SAME—*improper execution—rights of subsequent mortgagee without notice.* Where ample power is conferred by will on a life tenant to sell real estate for the support and maintenance of the donee of the power, and it is executed by a deed, which is recorded, and shows an apparently valid execution, but which in fact is in fraud of the rights of the remainder-man, a person who takes a mortgage on the land without notice of the facts impeaching the deed, and who is chargeable with no bad faith, should be protected in his rights, so far as it can be done without working injustice to others.

15. In such case, where a portion of the money loaned is applied by the fraudulent grantee, under the power, in discharge of debts which are proper charges against the land, and the balance is used by such grantee for an unauthorized purpose, the mortgagee will have an equitable right, on a sale of the land, on bill to set aside such deed and for partition, to have the first lien on the proceeds as to that part of the money used in payment of the proper charges on the land, but as to the balance of the loan he must look to the mortgagee's interest in the land for payment.

APPEAL from the Circuit Court of Mercer county; the Hon. JOHN G. GLENN, Judge, presiding.

Messrs. PEPPER & SCOTT, for the appellants:

The will gives three separate and distinct powers of sale, all to be exercised in the widow's discretion, alone: First, to pay the debts, if she chose; second, the same power to dispose of the land for support and maintenance that the testator

would have if living; and third, to do with the property in all things as the testator might do if living. This last clause clearly relates to the real estate, because he had made an absolute gift of the personal property.

We submit the following as propositions of law:

*First*—That if a power is granted, to be exercised and executed in the discretion of the grantee of the power, then, if the discretion is exercised and the power executed, a court of chancery will not interfere to set aside the execution of the power, unless fraud or collusion in such exercise is alleged and proven.

*Second*—That the appellees, under the will, took only a possible remainder, being burdened with the discretionary power vested in Mary Griffin to sell and convey the lands for either and all the purposes mentioned in the will, which powers having been executed without fraud and without collusion, there was nothing left for appellees to take, and consequently nothing left to partition.

*Third*—The purchasers were under no obligation to see to the application of the purchase money, in any exent.

And, finally, it devolves on the complainants to show that the powers were not executed in good faith, if such showing is permissible in such a case as this.

Messrs. BASSETT & BASSETT, and Mr. JOHN P. HAND, for the appellees:

We submit the following propositions for the consideration of the court:

*First*—Mary Griffin took all of the personal property for her own use forever, after payment of the debts of the testator.

*Second*—Mary Griffin was invested with a life estate in the real estate, with a power of sale of the fee for her maintenance and support.

*Third*—A purchaser from Mary Griffin under this power, (the necessity of such sale for her support and maintenance

being a condition precedent,) purchased at the peril of the sale being void if said condition precedent to the exercise of the power did not exist, and that a sale without the existence of such material condition precedent is a sale not authorized by the power, and no title can pass by it.

*Fourth*—The burden of proof is on the purchaser to show that at the time Mary Griffin attempted to execute the power by a sale of said real estate, such sale was necessary for her maintenance and support.

*Fifth*—As the proof entirely fails in support of the last proposition, the title did not pass to said purchasers, George and Septimus Griffin.

*Sixth*—Septimus Griffin obtained no title by the deed from his mother. As he obtained no title he could convey no title to James R. Spivey by mortgage, other than such as he took under the will, which was an undivided one-fifth interest.

Mr. JUSTICE BAKER delivered the opinion of the Court:

John Griffin made his will in 1858, and in 1865 he died, and his will was admitted to probate, and letters testamentary issued to Mary Griffin, his widow and testamentary executrix. He died seized of three tracts of land, two of them containing forty acres each, and the third, which was his homestead, containing eighty acres. The material parts of his will were as follows:

"*First*—All my honest debts are to be paid out of my real or personal estate that can be best spared, in the opinion of my executrix.

"*Second*—I give and bequeath to my wife, Mary Griffin, all my personal property, after the debts are paid, for her own use forever, and the use of all my real estate, lying in the town of Greene, aforesaid, during her natural life, with the same right to sell the same for her support and maintenance that I would have if living.

"*Third*—At the death of my said wife, if there should be any of the aforesaid real estate remaining, it is to be equally divided among our children, or their heirs and representatives,—say, heirs of William Griffin, deceased, one share; Henry Griffin, Hulda Griffin Calkins, Septimus Griffin and George Griffin, (or their heirs, in case of their death,) each one equal share : *Provided,* that if any of the aforesaid heirs are indebted to another of the aforesaid heirs, the debt is first to be paid, and the balance, if any, to be paid to said debtor.

"I hereby appoint my wife, Mary Griffin, my sole executrix to this my last will and testament, and she is not to give bonds or have the property appraised, but has a good right to do in all things as I would have just right to do if living; and at her death, if there should be any of said real estate left after paying all of her just debts, then the aforenamed heirs may divide the same among themselves, if they can agree, and if they can not agree among themselves, then the property to be sold and divided according to this will and the law in such case made and provided."

Mary Griffin, the widow, died in 1890, she being then almost ninety-two years of age. Shortly after her decease, Julia A. Griffin, grantee of the Henry Griffin designated in the will, and the four children of the deceased William H. Griffin therein mentioned, joined in exhibiting against Septimus Griffin, Hulda Griffin Calkins, the widow and children of George Griffin, deceased, and James W. Spivey, this bill in equity for the partition of the three tracts of land referred to above, and for other and further relief.

Hulda Griffin Calkins made default, and a decree *pro confesso* was entered against her. The widow and children of George Griffin answered the bill, and denied that there was any joint tenancy or tenancy in common existing between the parties to the suit, or any of them, and claimed that Mary Griffin in her lifetime, and under and by virtue of the power contained in the will of John Griffin, sold and conveyed the

two forty-acre tracts of land to said George Griffin. Septimus Griffin filed an answer of like import, and claimed that in 1889 Mary Griffin, under the power in the will, sold and conveyed to him the tract of land containing eighty acres, in order to obtain money to pay her debts, and in consideration of an agreement entered into by him to pay and cancel all her indebtedness, and support her during life and bury her decently. The answer of James W. Spivey stated, in substance, that Mary Griffin, under the power in the will, and for the purpose of raising money to pay her debts and to live on the rest of her days, deeded the eighty acres of land to her son Septimus Griffin, in order that he might get funds to pay said debts, and that afterwards said Septimus borrowed from him, Spivey, $1000, and gave as security therefor his note and mortgage on said land; and he claimed that the full and complete title in fee simple to the whole of said tract of land was in said Septimus at the time the mortgage was given, and that the mortgage is a lien on the entire tract. Replications were filed to these several answers.

Upon the hearing of the cause a decree was entered, which found the allegations of the bill to be true, and which set aside and cancelled the two deeds to George Griffin and the deed to Septimus Griffin, and ordered a partition of the premises, and the assignment of dower to Amelia Griffin. The decree also made the Spivey mortgage a lien on the entirety of the eighty acres, and required, in the event a sale was made, that said mortgage be paid out of the purchase money received for the said tract.

The principal contentions in the case are in regard to the interpretations that are to be placed upon the provisions of the will. It is suggested by appellants, that, manifestly, the testator's sole intention and purpose in executing the will was to provide for the comfort of his aged wife,—that every clause expresses this purpose, and he had no other object in view. This is hardly an accurate or fair statement of the matter.

Undoubtedly his wife was the paramount object of his bounty, but then his four living children were designated by name, and the children of his deceased son identified, as persons whom he especially desired to be recipients under the will. The general scope and plan of the will was to give the personal property to the wife, and in respect to the real estate to create a life estate in the wife, with power to sell and convey the fee, and limit a remainder, after the termination of the life estate, in the designated children and grandchildren. *Fairman* v. *Beal,* 14 Ill. 244; *Markillie* v. *Ragland,* 77 id. 98; *Funk* v. *Eggleston,* 92 id. 515; *Henderson* v. *Blackburn,* 104 id. 227; *Hamlin* v. *United States Express Co.* 107 id. 443; *Kaufman* v. *Breckenridge,* 117 id. 305.

It is claimed by appellants, that in the will there are three separate and distinct investments of power to sell real estate, each to be exercised at the discretion of the donee of the power: First, to pay the debts of the testator out of the real estate, if deemed best; second, the same right to dispose of the land for the support and maintenance of the wife that the testator would have if living; and third, a good right to do in all things, with all the property, what the testator would have just right to do if living. These claims we will consider, so far as they are necessarily involved in passing upon the validity of the several deeds here in controversy.

The first deed, in order of date, is that of May 23, 1866, executed by Mary Griffin to Henry Griffin, for forty acres of land. Where a person has two or more powers over the same estate, with different circumstances, and does an act and makes no reference to either power, such act will be deemed an execution of that power which will support the disposition. (1 Sugden on Powers, *358.) We think this deed was a valid exercise of the power given in the first clause of the will. It is true that the power there granted was granted to Mary Griffin, the executrix, in her trust or official capacity of executrix, and that she did not attach the designation of executrix

to her signature to the conveyance, or name herself therein as executrix, or refer to any will or power. These, however, in our opinion, are only matters of form, and not material. (*Hamilton* v. *Crosby*, 32 Conn. 342, note.) The will left it to the opinion of the executrix whether the debts of the deceased should be paid out of real estate or out of personalty, and she having sold the land and made the deed, must be deemed to have elected to pay such debts out of the realty.

It is urged that as Mrs. Griffin sold personal property left by the deceased, and obtained some $1280 therefor, it is therefore to be presumed that she paid said debts out of such proceeds; but it seems to us that from the fact that she sold this land in less than a year after the death of her husband, and did not sell any personal property until considerably more than two years after such death, and in view of the discretionary power given her by the will in respect to the payment of debts, and of the principle, *ut res majis valeat, quam pereat,* no such presumption can or should arise.

It is insisted that the existence of debts is a condition precedent to the exercise of the right to make a sale, and that there is no proof that there were any debts. If we assume that, since Mrs. Griffin did not have the fee which she sold, but merely sold under a power, the burden is on appellants to show the existence of debts, we think that, as the bill to impeach the sale was not filed until twenty-four years after the deed was executed, and until after both the grantor and grantee were dead, such lapse of time, and the fact of the death of the parties to the transaction, may properly be taken into consideration, and especially so in the absence of any proof tending to show there were no debts. The debts of the testator are mentioned in two different clauses of the will, and from such mention an implication arises that he had debts, and as there is nothing to show that they had been paid or that the statute had barred them, it is to be presumed that they continued to exist. The fact that no claims were pro-

bated against the estate, is of no moment in this particular case. It does not appear that the executrix ever fixed any time for the adjustment of claims against the decedent, and by express provision of the will she was to give no bond, and was relieved from the duty of having the property appraised, and was given in respect to the administration and settlement of the estate a good right to do in all things as the testator himself "would have just right to do if living." We think this objection should not prevail.

Our conclusion is, that the deed was a good execution of the power in the first clause of the will.

The deed of June 14, 1877, made by Mary Griffin to George Griffin for forty acres of land, is next in order of time. Said deed contains this recital: "This deed is made, and the sale of said land, in pursuance of the will of John Griffin, to obtain money for the support of the said Mary Griffin, the said widow of said John Griffin, as all the other personal effects bequeathed in said will are absorbed, and there is no other means left for the support of said widow." A report was found among the estate files of the county court, signed and sworn to by Mary Griffin, as executrix, which says, that "the personal estate being fully exhausted, she was without means for her support several years ago, and then sold the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of Sec. 2 to George Griffin for $600, and made a deed under the will." This paper is entitled in the estate, and filed in the county court September 20, 1880, having been duly sworn to before the clerk of said court by said Mary Griffin, and the affidavit contains the statement "that she needed the proceeds of said sale for her support and maintenance." It thus appears that this conveyance was made for the purpose of executing the power donated in the second clause of the will. Looking at that clause we find that the testator reposed confidence in his wife, and invested her with the same right to sell all of his real estate for her support and maintenance that he himself would have if living. He did not see fit to

restrict her power of disposition to simply an authority to sell in the event a sale was essential for her *necessary* support and maintenance, and it is not for the courts to annex such a provision.

This case is essentially different from *Henderson* v. *Black-burn*, 104 Ill. 227, cited by appellees. There the power of disposition was "of so much of the same (*i. e.*, the estate,) as she (*i. e.*, the donee,) may need or wish to use during her life-time." It was held that the power of disposal was not an absolute power of disposal, but was one limited to the need and personal use of the widow, and that for such purpose she might dispose of the property, but not for any other purpose. The deed there was held invalid, and the decision was put upon the ground that said deed itself, instead of disposing of the property to meet any need or personal use of the widow herself, expressly retained the property for her use and enjoy-ment so long as she should live, and was not to take effect until her death. Here, on the other hand, John Griffin left it to his wife to determine whether or not she should sell land for her support and maintenance; and the purchaser had a right to rely upon the fact that the execution of the power did not depend upon an actual necessity for making the sale, and that he was therefore relieved from the duty of ascertaining that a sale was essential for the support and maintenance of the widow. Here, the condition imposed by the phrase, "with the same right to sell the same for her support and mainten-ance that I would have if living," was not a condition preced-ent, but a condition subsequent, and it did not devolve upon the purchaser to ascertain that there was a necessity to sell for the purposes indicated in the will, or to see to the applica-tion of the purchase money. Here, as we have already seen, the first and paramount objects of John Griffin were the com-fort and happiness of his wife, and in order more effectually to secure them, he clothed her with a power, to be exercised in her discretion, to sell any or all of the real estate for her

maintenance and support, and the amount of money that she should use for those purposes was restricted by no words of limitation, but left solely to her own judgment.

The matter of this deed of June 14, 1877, is, in legal principle, like *Crozier* v. *Hoyt,* 97 Ill. 23. In that case the specifications of purposes for which the power to sell and convey could be exercised were three,—for the necessary maintenance and support of the donee, to help her daughter Mrs. Romine if she should become a widow, and to help her daughter Mrs. Roberts or her children. The last purpose, "to help her said daughter or her children," was very clearly a condition subsequent to the sale, and the power to sell for said purpose was held to be a discretionary power, and the conveyances there challenged were sustained, regardless of the question whether the proceeds of the sales had in fact been applied to help said daughter or her children.

In our opinion this second deed under consideration was a valid exercise of the power given in the second clause of the will.

The deed to Septimus Griffin for the tract of land containing the eighty acres can not be sustained if referred to the power contained in the first clause of the will,—the power to pay the debts of the testator out of the real estate,—for the testator died in 1865, and the sale and conveyance to Septimus were not made until 1889,—twenty-four years thereafter,— and whatever debts the deceased left him surviving, were either paid or barred by the Statute of Limitations when the sale and deed were made. If the debts for the payment of which a power is created are all either paid or barred, then the grantee of the power is not authorized to exercise the power of sale. *Shippen* v. *Whittier,* 117 Ill. 282; 2 Perry on Trusts, sec. 785.

. Nor is said deed validated by virtue of the provision in the latter part of the will, which says: "I hereby appoint my wife, Mary Griffin, my sole executrix to this my last will and testament, and she is not to give any bonds or have the prop-

25—141 ILL.

erty appraised, but has a good right to do in all' things as I would have just right to do if living." We do not regard this as a delegation of power to make sales of real estate "as the testator would have just right to do if living," additional to the powers of disposition of such estate given in the first and second clauses of the will. When the testator came to write this latter provision, he had already, by necessary implication, authorized his wife to sell such property to pay his debts, and had already in express terms authorized her to sell for her maintenance and support. In the clause above quoted he had in mind the settlement of his estate, and was engaged in making provision therefor. He first designates his wife as his sole executrix, and directs that she shall not be required to give bonds for the due performance of her duties as such, and announces his wish that she should not be required, as such executrix, to have an appraisement made of his property, and then, in immediate connection therewith, says, "but (she) has a good right to do in all things as I would have just right to do if living." Manifestly, this language has reference only to what his wife might do in her capacity of executrix, and in settlement of his estate. The most that can reasonably be said of it in respect to the matter of a donation of power for the disposition of real estate, is, that it is broad enough in its terms to apply to and enlarge the implied power to sell real estate, given in the first clause of the will. And if this be so, that clause, as thus explained and enlarged, simply gives his executrix power, if in her opinion it is best, to sell real estate to pay his debts, and in accomplishing that object, to do all things that he, the testator, would have the just right to do if living. The result reached is, that said debts being paid or barred when the power was attempted to be executed by a sale and deed to Septimus Griffin, such sale and deed were not a good execution of the power.

The question still remains, was the power in the second clause of the will well executed by a sale and deed to Septimus

Griffin for the support and maintenance of Mary Griffin? At the time the latter made the deed, in 1889, she was ninety or ninety-one years of age. Her son Septimus, grantee in said deed, had rented from her the home eighty, (the premises described in the deed,) and she was living in certain rooms reserved by her. She was very economical, and the evidence shows that not more than from $50 to $65 a year was used for her food, clothing and other expenses of maintenance and support. She was drawing from the government a pension of $144 a year, and was receiving as rent one-third of the crops raised on the farm. She was in debt some $400 for expenses incurred in a certain litigation, and Septimus was in debt to a considerable amount. She was desirous of borrowing money to pay off her indebtedness and help Septimus out of his troubles, but found she had no authority, under the will, to mortgage the land. Septimus testifies: "I told my mother that I would buy the place, and then I could get the money to pay off her indebtedness, as she could not mortgage the place for a cent. She said she was well aware of that, and was willing to do that. She sold me the place with the understanding that I was to take care of her, and to take care of her the same as I had done, as long as she lived, and give her a decent burial." She thereupon made and delivered to him a warranty deed for the premises, which contained no recitals, or reference to the will, or to any power, and said deed was duly recorded. On the same day he and his wife made and delivered to her an instrument, which reads as follows:

"$2000. ALEDO, ILL., *Jan. 15, 1889.*

"On demand, I promise to pay to Mary Griffin $2000, for value received. This note is made on express condition that upon complying with the following stipulation on the part of the maker hereof the said note shall be fully discharged and cancelled, viz., the makers hereof shall care for and support the said Mary Griffin during her natural life, to furnish her

board, clothing, medical and other necessary attendance, and pay her funeral expenses when dead. And this note is not transferable, and shall be discharged on performance of said services by the maker hereof, or his family.

SEPTIMUS GRIFFIN,<br>JULIA A. GRIFFIN."

Septimus Griffin and his wife also on the same day gave to Mary Griffin a mortgage on the land in question, to secure said instrument, and the mortgage contained this recital: "This mortgage to be discharged by supporting the grantee during her natural life, and giving to her a life lease on the land if that is not done. The mortgagors agree to take care of her, clothe and board her, and furnish her medical and other necessary attendance, and pay her funeral expenses when dead, and the note is not transferable, and is to be discharged on performance of said services by the mortgagor or his family." This mortgage was not placed on record. Thereupon Septimus Griffin borrowed from James R. Spivey $1000, and secured it by a mortgage on the land. As we understand the evidence, about $409.19 of the $1000 was used in paying the debts of the mother, Mary Griffin, and Septimus applied some $590.81 in paying off debts of his own, and for his own individual use. The land was worth from $3200 to $4000.

This was not a good execution of the power to sell the land for the support and maintenance of Mary Griffin. The sale and conveyance were a fraud on the rights of the devisees of the remainder in fee. It was a perversion of the power given by the will, and not a *bona fide* exercise of that power. It was not within the reasonable contemplation of the power that the land should be sold thereunder for the purpose of paying the debts of the life tenant incurred for purposes other than her support and maintenance. Nor was it within its contemplation that the land should be sold otherwise than in the usual and customary manner, for a stipulated sum in money, and with some reference to its value. That which John Griffin

authorized his wife to do, was *"to sell"* his real estate,—*i. e.,* dispose of it for an equivalent in money. It would hardly be contended that if Mary Griffin, immediately upon the death of her husband, had conveyed all the lands, under the power, to a person who agreed to support and maintain her during life and bury her when dead, it would be a valid conveyance within the purview of the power; and it does not help the matter that she refrained from so doing until she was over ninety years of age, and stood with one foot in the grave. Septimus was a party to this fraud and perversion. In fact, according to his own testimony he first suggested it, and we think, from the evidence, that he was the principal actor in the whole transaction. He can not lawfully and equitably profit by his own wrong. There was no error in setting aside and cancelling the deed to him.

There is no evidence, however, of bad faith in James W. Spivey, the mortgagee of Septimus Griffin. He loaned his money on the faith of the title as it was made to appear of record. The power in the will for maintenance and support was amply sufficient to support a conveyance by Mary Griffin, and there was apparently a valid execution of it. The equities of Spivey should be protected so far as can be done without working an injustice to others. The will, in its last clause, refers to Mary Griffin, and says: "At her death, if there should be any of said real estate left *after paying all of her just debts,* then the aforenamed heirs may divide the same," etc. This made the debts of Mary Griffin existing at her death, no matter for what purpose contracted, a charge upon the land, and gave them priority over the claims of the devisees in fee; and, as we have already seen, $409.19 of the $1000 loaned was applied to pay debts of said Mary. It may properly be considered that by a sort of equitable novation Mary Griffin was indebted to Spivey in this amount of $409.19, and interest. Said indebtedness, however, even in the lifetime of Mary, was not an indebtedness for the payment of which the land could

be sold under any of the powers in the will. For the payment of this $409.19 it is equitable and just that the entire interest in the land should contribute; but in respect to the $591.81 it is not perceived upon what principle it can be said that the equities of Spivey are superior to those of the owners, other than Septimus, of the fee.

As we have heretofore stated, the circuit court decreed that the Spivey mortgage was a lien on the interest of all the parties who took title in fee to the eighty acres included in that mortgage, and directed the mortgage debt to be paid out of the purchase money obtained therefor. This charged all of the several devisees equally with the mortgage debt, in proportion to their respective interests. The correctness of this portion of the decree is challenged by the assignment of cross-errors. We think that the decree should be modified in this regard. The $409.19 that went to pay the debts of Mary Griffin, and interest thereon, should be paid *pro rata* out of the respective interests of the several owners in fee, including that of Septimus Griffin. The $591.81, and interest accrued thereon, should then be paid wholly and only out of the residue of the proceeds of the one-fifth interest belonging to Septimus Griffin.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree sustaining the validity of the two deeds executed to George Griffin, setting aside and cancelling the deed executed to Septimus Griffin, and decreeing partition of the eighty-acre tract of land, and of that only, and providing for the payment of the mortgage thereon in conformity with the views above expressed.

*Decree reversed in part and in part affirmed.*