SALLIE F. SAYER *et al.*

*v.*

CLARA E. HUMPHREY.

*Opinion filed June 23, 1905—Rehearing denied October 11, 1905.*

1. CONTRACTS—*when assignment of interest in an estate is void.* An assignment of a person's interest in his father's estate to the "heirs and executors of said estate," made during the lifetime of his father, is null and void, there being, in such case, no persons answering the description of heirs and executors.

2. SAME—*wife has no power to bind herself to convey husband's property during his lifetime.* A written agreement made by a wife during her husband's lifetime to convey, upon request, to a certain person, in consideration of his release of his interest in her husband's estate, property owned in fee by her husband and under his control, has no binding force, the promise being void for want of mutuality.

3. SAME—*when agreement to convey land cannot be enforced.* An agreement by a widow to convey certain property to her son upon request cannot be specifically enforced, where her only interest in the land is derived from the will of her husband devising the same to her, "to hold for the future benefit of herself and children, and which she may dispose of to our children in just and proper proportions, as necessity and due regard to prudence may dictate, as long as she remains unmarried and my widow."

4. WILLS—*provision of will construed.* A will devising the testator's property to his widow, to hold for the benefit of herself and children and dispose of the same to such children in just proportions, "as long as she remains unmarried and my widow," passes, at most, a life estate with power to dispose of the fee to the children, only, and by deed but not by will.

5. EQUITY—*rule as to aid of equity in executing powers.* Where no attempt to execute a power of appointment is made during the

lifetime of the donee of the power a court of equity will not execute such power, particularly where the property, upon non-execution of the power, is limited over to other persons; nor will it aid a defective execution of a power unless there was a meritorious consideration moving from the person to be benefited.

APPEAL from the Circuit Court of Moultrie county; the Hon. WILLIAM C. JOHNS, Judge, presiding.

This was a bill in chancery filed by Clara E. Humphrey, the appellee, against Polly A. Trower, Sallie F. Sayer, Jacob Galster, George W. Julian, the Merchants' and Farmers' State Bank of Sullivan and B. F. Rork in the circuit court of Moultrie county, to require Polly A. Trower to specifically perform the provisions of the following instruments in writing:

"CHARLESTON, ILL., Aug. 20, '77.

"For and in consideration of moneys to me in hand paid by Thomas B. Trower, my father, I hereby assign all my right, title and interest in his estate to the heirs and executors of said estate, reserving no right to myself or my heirs, waiving all liens that may in future appear or in any way show equity in my favor or my heirs or assigns. In witness whereof I have hereunto set my hand and seal the year hereinabove written.

X. B. TROWER. (Seal.)"

"For and in consideration of my son, X. B. Trower, signing the release dated Charleston, Ill., Aug. 20, 1877, of his interest in his father's estate, and attached hereto, I solemnly promise and agree to deed to him, at any time he may request me to do so, for his own use and benefit, the following property: The business house in Sullivan, Moultrie county, Ill., in which he carried on a bank; the 160 acres of land in Edgar county, Illinois, described as follows: The south half of the north-east quarter and the north half of the south-east quarter, section 22, town 16, range 14, 2; the Shelby county farm, described as follows: The west half of south-east quarter and east half of the south-west quarter, section 21, township 12, range 32. I do this to protect my son from danger or loss to him on account of his signing the foregoing release and that his father intended he should have the property herein described in the division of his estate. I also agree and promise to give my son, X. B. Trower, power of attorney to manage said property as he wishes until it is deeded to him as herein agreed. Whereunto I have set my hand and seal, Charleston, Ill., Aug. 20, 1877.

P. A. TROWER. (L. S.)"

—by conveying to the appellee the real estate described in the instrument purporting to be signed by P. A. Trower. On October 19, 1903, George W. Julian died, and his widow and heirs were substituted as defendants in his stead, and on February 27, 1904, Polly A. Trower died, and Sinia Norfolk and Sallie F. Sayer, her surviving children and sole heirs-at-law, (Amerial Silverthorn having died prior to the death of Polly A. Trower,) were substituted as defendants in her stead. The Merchants' and Farmers' State Bank of Sullivan and B. F. Rork were in possession of a portion of the business house in Sullivan referred to in said instrument and were only nominal defendants. Answers and replications were filed and the cause was heard in open court and a decree was entered in accordance with the prayer of the bill, and Sallie F. Sayer, Jacob Galster and the widow and heirs of George W. Julian, deceased, were directed to convey to the complainant the portions of said real estate held by them, respectively, and an appeal has been prosecuted to this court.

On April 15, 1878, Thomas B. Trower departed this life testate, the owner in fee simple of the real estate in question, leaving him surviving Polly A. Trower, his widow, and X. B. Trower, Amerial Silverthorn, Sinia A. Norfolk and Sallie F. Sayer, his son and daughters and sole heirs-at-law. The only provision of his will which bears upon the matters now under consideration is the following:

"*Clause 2*—I give, bequeath and devise to my beloved wife, Polly Ann Trower, all of the rest and residue of my personal and real estate, together with any and all estate, right or interest in the lands which are or may be acquired after the date of this will, to have and to hold for the future benefit of herself and children and which she may dispose of to our children in such just and proper proportions as necessity and due regard to prudence may dictate, as long as she remains unmarried and my widow; but on her decease or marriage I give and devise the remainder of my said estate to my children, viz., Mrs. Lemuel L. Silverthorn, Xavier B.

Trower, Sinia A. Norfolk and Sallie F. Sayer, in equitable proportions, as may be deemed right and proper, taking into account what they have had heretofore, which will appear from a book kept by myself for the purpose of showing that to them and their heirs, to have and to hold the same in fee simple forever."

Polly A. Trower was named as executrix in the will of Thomas B. Trower and qualified and acted as such. X. B. Trower died testate on December 7, 1896, leaving the complainant, his widow, him surviving, she being named in his will as his sole and only devisee. On the 26th of April, 1897, Polly A. Trower and her three daughters and their husbands conveyed by warranty deed, for a valuable consideration, to Jacob Galster the Shelby county farm, and on November 13, 1897, the same grantees conveyed by warranty deed, for a valuable consideration, to George W. Julian the Edgar county farm, and on December 1, 1897, Polly A. Trower conveyed the business house in Sullivan to Sallie F. Sayer. On December 5, 1879, Polly A. Trower executed to X. B. Trower a power of attorney authorizing him to rent said farms, collect the rents, make repairs, etc.

X. B. Trower was in the banking business in Sullivan prior to 1879, in which year he failed, after which he was insolvent and in poor health, did no business, earned no money and was supported by funds which he received from his mother, which came from the income of his father's estate. The complainant, prior to the filing of her bill and on the 6th day of June in the year 1899, made a demand upon Polly A. Trower that she convey to her said real estate in accordance with the terms of said instruments in writing bearing date August 20, 1877.

JAMES A. CONNOLLY, (A. J. FRYER, of counsel,) for appellants.

W. M. PROVINE, E. J. MILLER, and J. C. & W. B. MC-BRIDE, for appellee.

JOHN R. EDEN, and F. M. HARBAUGH, for cross-complainant, Isaac Horn.

Mr. JUSTICE HAND delivered the opinion of the court:

The bill in this case was filed, and the decree entered in the court below is sought to be sustained, upon the theory that the instruments, which are in the handwriting of X. B. Trower and written upon one sheet of paper, bearing date August 20, 1877, one signed by X. B. Trower and the other by P. A. Trower, when taken together constitute such a contract in writing for the conveyance of the real estate described in the instrument signed by P. A. Trower, that the complainant, as a devisee of X. B. Trower, may maintain a bill for specific performance of said contract. At the time said instrument bore date,—August 20, 1877,—Thomas B. Trower, the husband of Polly A. Trower and father of X. B. Trower, was living and was the then owner, in fee simple, of the real estate referred to in the instrument signed by P. A. Trower. Thomas B. Trower then had no "heirs and executors," and there was no person or persons answering to that description in being to accept said estate as assignee of X. B. Trower, and said assignment was for that reason of no effect, but was null and void. (*Faloon* v. *Simshauser,* 130 Ill. 649.) If, however, it were conceded that the assignment was a valid transfer of the interest of X. B. Trower in his father's estate to his father's "heirs and executors," upon no principle of law could the promise made by Polly A. Trower to X. B. Trower, in the instrument signed by her, to deed to him said real estate upon request, which was then the property of and in the possession of and under the control of her husband, be enforced, as during the life of Thomas B. Trower Polly A. Trower had no interest in said real estate other than an inchoate right of dower, and she could make no contract to convey the same to X. B. Trower, upon request or otherwise, which he could enforce against her. Her promise was void for want of mutuality, (*Gage* v.

*Cummings,* 209 Ill. 120,) and during the lifetime of Thomas B. Trower his will had no force or effect, and Polly A. Trower, by virtue of the terms of the will, could perform no valid act whereby she could bind herself or Thomas B. Trower, or his estate, by any promise she might make to X. B. Trower to convey to him said real estate in consideration of the release to the "heirs and executors" of Thomas B. Trower of his interest in his father's estate. It is therefore clear that neither of said instruments in writing had any validity or binding force upon Polly A. Trower during the lifetime of Thomas B. Trower.

It is urged, however, that subsequent to the death of Thomas B. Trower the instrument by which X. B. Trower had released his interest in his father's estate, and the instrument by which Polly A. Trower promised, upon request, to convey to him said farms and business house in Sullivan, were so far acted upon and ratified by Polly A. Trower and X. B. Trower as to make the same a valid and binding contract to convey said premises to X. B. Trower, and which might be specifically enforced in a suit in equity by the complainant against Polly A. Trower. The question therefore arises, after the death of Thomas B. Trower did anything take place which made the promise of Polly A. Trower to convey said real estate upon request to X. B. Trower valid?

By the will of Thomas B. Trower Polly A. Trower was given the rest and residue of his estate, "to hold for the future benefit of herself and children, and which she may dispose of to our children in such just and proper proportions as necessity and due regard to prudence may dictate, as long as she remains unmarried and my widow." All the power of Polly A. Trower to deal with said real estate subsequent to her husband's death is to be found in the foregoing clause of his will. By that provision of his will the testator intended his widow should hold the rest and residue of his estate, which included the real estate in question, during her widowhood, for the use of herself and her children,

which created in her, at most, but a life estate, and she was, "so long as she remained unmarried and my widow," given the power to dispose of said real estate "to our children in such just and proper proportions as necessity and due regard to prudence may dictate;" that is, she was given power to dispose of said real estate to said children by deed but not by will. She was not given the power to sell said real estate generally, or to contract with reference thereto generally, but she was so confined by the terms of the will that she could only dispose of the said real estate to the children of Thomas B. Trower and herself, which disposition she was required to make during the time that she remained the widow of Thomas B. Trower. The testator had the right to impose such conditions upon the exercise of the power of his widow to dispose of said real estate, and no transfer thereof could be made by her without strictly complying with the terms of said will. *Griffin* v. *Griffin,* 141 Ill. 373; *Fleming* v. *Mills,* 182 id. 464.

We find some evidence in this record from which the inference, perhaps,—and it is but an inference,—may be drawn that the instruments in writing signed by X. B. Trower and P. A. Trower, set out in the statement preceding this opinion, were not executed upon the day they bear date,—August 20, 1877,—but were executed subsequent to the death of Thomas B. Trower. Whether said instruments were executed prior or subsequent to the death of Thomas B. Trower, we think them clearly invalid as an enforcible contract against Polly A. Trower. If the instrument purporting to be signed by Polly A. Trower was executed by her prior to her husband's death it was invalid, as at that time she had no interest in the real estate and could make no valid contract with reference thereto; and if it was executed by her subsequent to her husband's death it was invalid and incapable of enforcement against her by reason of the fact that Polly A. Trower had no power, under the terms of Thomas B. Trower's will, to purchase the interest of X. B. Trower in his

father's estate for the benefit of his father's "heirs and executors," and in payment thereof transfer, or agree to transfer, to him said farms and business house. Her power was limited by the will, and was confined to the right to dispose of the estate to the children of Thomas B. Trower and herself in such just and proper proportions as necessity and due regard to prudence might dictate.

The instrument in writing signed by Polly A. Trower appears to have been seen by no one other than Polly A. Trower and X. B. Trower until after the death of X. B. Trower, and no demand was made upon Polly A. Trower by X. B. Trower to execute to him a deed for said real estate, and no effort was made by him to enforce a conveyance to him of said real estate by Polly A. Trower during his lifetime. After his death the instrument appears to have been found by his wife in a pocket-book in his house, where he kept his papers. It is said, however, that Polly A. Trower recognized X. B. Trower to be the owner of said farms and that he was in possession thereof, and that the complainant should not be barred by his delay from enforcing the specific performance of the promise of Polly A. Trower to convey to him said lands upon request. We are not satisfied from the evidence that X. B. Trower was ever in possession of the farms in question except under the power of attorney made to him by his mother. A number of letters written to X. B. Trower by his mother perhaps indicate that she recognized he had some interest in said farms. There is, however, in said letters no reference to the business house in Sullivan which indicates in any way that she considered that he had an interest therein, and for many years prior to his death we have discovered no declaration of Polly A. Trower which in any way indicates that X. B. Trower had any interest in said lands. At the time that the letters referring to said farms were written, X. B. Trower held, and presumably was acting under, the power of attorney from his mother which authorized him to rent said farms, to collect the rents and to make

improvements thereon, etc., and during the subsequent years said X. B. Trower was without funds and he and his family were being supported by Polly A. Trower. If, however, it were held that the fact that X. B. Trower had been in possession of said premises during the time which had intervened between the execution of the said instruments and his death would relieve him from *laches* for a failure to request a deed or to take some action against Polly A. Trower to acquire the legal title to said farms and business house in Sullivan, still, after so long a lapse of time had intervened between the date of said instruments and his death, and after the rights of third parties had intervened and after Polly A. Trower was dead, such delay should not be excused except upon clear proof that X. B. Trower was originally entitled to have conveyed to him the legal title to said real estate by Polly A. Trower, and that his possession of said real estate had been of such an open and exclusive character as to bring notice of such possession and of his rights in said real estate home to all persons who might deal with Polly A. Trower or the other.heirs of Thomas B. Trower, deceased, with reference to such real estate.

We think it clear the complainant, in view of the facts appearing in this record, has no contractual rights which she can enforce by bill in equity for specific performance against Polly A. Trower. Nor do we think the bill can be maintained or the decree sustained on the theory that the power conferred upon Polly A. Trower to dispose of said real estate to the children of Thomas B. and Polly A. Trower by the will of Thomas B. Trower has been defectively executed. The rule is well settled that a court of equity will not enforce the non-execution of a power, but may interpose to supply a defective execution of a power in a proper case. A power is said to be non-executed when nothing is done towards carrying the power into execution, and defectively executed when there has been an intention to execute and that intention sufficiently declared but the act declaring the intention was not

an execution in the form prescribed. We think it clear Polly A. Trower never intended to execute the power,—at least she never declared her intention to execute the power. The most that can be said is, that she promised X. B. Trower, if he desired her to execute said power by transferring to him said farms and business house in Sullivan, that she would do so upon his request, but said request was never made and she never attempted to execute the said power, although X. B. Trower lived for many years after she promised to execute the power upon his request. The execution of said power was discretionary with Polly A. Trower, and she having promised to execute the same only upon the request of X. B. Trower and he having failed to make such request, and the power not having been executed at the time of her death, the power, as to her, was non-executed, and therefore its execution cannot be enforced in favor of a stranger to the will of Thomas B. Trower after the death of X. B. Trower. The nature of a power is to leave to the free will and election of the donee the question whether it shall or shall not be executed, and a court of equity will not, as a general rule, upon the non-execution of a power to appoint among a certain class, take upon itself the duty of executing the power in favor of such objects, especially where the property is, upon non-execution, limited over to other persons, and in no event will it aid a defective execution of a power unless there is a meritorious consideration moving from the person to be benefited by its execution. (22 Am. & Eng. Ency. of Law,— 2d ed.—p. 1127.)

It is provided in Thomas B. Trower's will that after the marriage or death of Polly A. Trower the remainder of his estate shall go to his four children in fee, provided it had not been disposed of by Polly A. Trower, during her lifetime, to said children. The fee to the real estate in question under this provision vested in the four children of Thomas B. and Polly A. Trower at the death of Thomas B. Trower, subject to be divested by the conveyance thereof by Polly A. Trower

to a child, or to one or more of the children, of the said Thomas B. and Polly A. Trower. The two farms described in the bill were conveyed, respectively, to Julian and Galster by Polly A. Trower and her daughters and their husbands. The sole effect of the deeds of Polly A. Trower to said Julian and Galster was to release her life estate in said farms, as she was powerless to convey the fee therein except to a child or the children of Thomas B. and Polly A. Trower. At the time of the death of X. B. Trower he therefore was seized of the one-fourth part of said Shelby and Edgar county farms, which interest was never divested by conveyance by Polly A. Trower to a child or the children of Thomas B. and Polly A. Trower. The business house at Sullivan was, however, conveyed by Polly A. Trower to Sallie F. Sayer in fee. It is said, however, that the deed made by Polly A. Trower to Sallie F. Sayer was made by Polly A. Trower as widow, and that it did not have the effect to pass the fee. A second deed was made, which cured the defect, if any there was, in the first deed, and Polly A. Trower had the power, at any time during her lifetime, to dispose of said business property by conveying it to one or more of the children of Thomas B. and Polly A. Trower, as in her discretion she might determine necessity and prudence might dictate. Sallie F. Sayer was therefore seized in fee of the business house in Sullivan at the time of her mother's death.

The decree of the circuit court will be reversed and the cause remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE RICKS took no part in the decision of this case.